**Craig L. MORROW**

v.

**John S. FARRELL, et al.**

**No. Civ.A. DKC 2001–1221.**

United States District Court,
D. Maryland.

Feb. 25, 2002.

David M. Melnick, Law Offices of David Melnick, Rockville, MD, for plaintiff.

Kevin Bock Karpinski, Allen Karpinski Bryant and Karp, PA, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination civil rights case is Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court shall grant Defendants' motion for summary judgment.

### I. Background

The following facts are uncontroverted or in the light most favorable to Plaintiff.

Plaintiff Craig L. Morrow became a Prince George's County police officer in June, 1989, eventually achieving the rank of Corporal. In June, 1997, Plaintiff was working in the Sexual Assault Unit, Criminal Investigations Division. On or about June 23, 1997, Plaintiff was assigned to investigate an alleged second degree rape. The victim, Felicia McCarthy, had been examined at Prince George's Hospital on June 21, 1997 and interviewed on that date by Officer Sherry Prince and Corporal Candice Santos of the sexual assault unit.

Plaintiff telephoned McCarthy on June 24, 1997, to discuss the case, at which time he found out that no photographs had been taken of her injuries. According to Plain-

tiff, the taking of such photographs was standard procedure to preserve evidence and Cpl. Santos had violated standard operating procedures in failing to take photographs.

At Plaintiff's request, McCarthy came to the Criminal Investigations Division for an interview and follow-up. At this time, she advised Plaintiff that she still had abrasions and/or bite marks on several areas of her body and was concerned that no photographs had been taken. When McCarthy requested that photographs be taken, Plaintiff was unable to find an evidence technician or female officer. Though he informed McCarthy that he was uncomfortable taking the photographs himself, McCarthy declined to take the photographs herself and Plaintiff took six photographs of McCarthy's neck, breasts and vaginal area. The photographs were taken in a private interview room and subsequently placed with the case file in the filing cabinet where Plaintiff kept his active case files.

McCarthy subsequently complained and an internal investigation was undertaken by the Internal Affairs Division ("IAD") of the Prince George's County Police Department. On or about September 11, 1997, IAD issued a report of the investigation and in November 1997, Plaintiff was formally charged with a violation of General Order 1–103, "Unbecoming Conduct" and General Order 1–201.10, "Individual Dignity." As a result, Plaintiff was suspended and placed in a position where he would not be in contact with the public. After reviewing the results of a fitness for duty examination, the Medical Advisory Board found Plaintiff fit for duty. However, Chief

Farrell informed Plaintiff he would not be returned to duty.

After an Administrative Hearing Board ("AHB") was conducted on or about February 12, 1998, Plaintiff was found guilty of violating both General Orders for his conduct in taking the photographs of McCarthy. In an April 9, 1998, report which included a number of findings of fact, the majority of the AHB recommended termination of Plaintiff. Subsequently, Plaintiff was terminated by Chief Farrell effective May 1, 1998. Plaintiff's petition appealing the AHB findings to the Prince George's County Circuit Court was dismissed on September 8, 1999. Paper no. 9, ex. 1.

McCarthy filed a lawsuit against Plaintiff, Cpl. Santos and Prince George's County on or about July 19, 1999, in Prince George's County Circuit Court. The case concluded with a grant of summary judgment in favor of the defendants on technical grounds.[1] Plaintiff alleges that undisputed facts from that case demonstrate that McCarthy did not consider Plaintiff's conduct improper at the time and that she did not go through the process of making her complaint until contacted by IAD. Paper no. 9, at 4, Ex. 2.

Plaintiff brings the pending case to gain redress for injuries allegedly incurred in the process of being disciplined and terminated by the Prince George's County Police Department. The only Defendants remaining in the case are John S. Farrell, individually and in his official capacity as Chief of Prince George's County Police, and Prince George's County.

Plaintiff has three counts remaining against Defendants.[2] Count I, though stated inartfully, is for employment dis-

---

1. Summary judgment was entered on the ground that McCarthy did not provide notice under the Local Government Tort Claims Act. Paper no. 11, at 2.

2. Count IV in the complaint for conspiracy under § 1985 was voluntarily dismissed by Plaintiff as recognized in the court's order dated January 16, 2002. Paper no. 19.

crimination and violation of equal protection under 42 U.S.C. § 1983 and § 1981. Count II is for violation of due process rights under the Fourteenth Amendment, apparently brought under § 1983. Count III contains due process and equal protection claims brought under Article 24 of the Maryland Declaration of Rights. For reasons that follow, summary judgment will be granted as to all counts.

## II. Standard of Review

Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment. Summary judgment may only be granted after the nonmoving party has had "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff has filed an affidavit under Fed.R.Civ.P. 56(f) opposing summary judgment on the grounds that information necessary for his opposition is unavailable or more discovery is necessary.[3] It is not enough for Plaintiff merely to lament the need for more discovery. " '[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.' " *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995), *quoting Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir.1993) (internal quotations omitted). Plaintiff is required to, ". . . focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery." *Nguyen*, 44 F.3d at 242. In his affidavit, Plaintiff makes only generalized statements about disparate treatment by the disciplinary system without specifying what discovery might be needed or pointing to specific facts that might merit further discovery. Were Plaintiff's request to be granted, he would need unfettered access to the Police Department's Internal Affairs files for what amounts to a fishing expedition. Plaintiff fails to point to specific discovery needs and, though the court proceeds with due caution when considering a motion for summary judgment before discovery is completed, Plaintiff's request for more discovery is denied. Accordingly, the court will analyze his claims under the standard for summary judgment.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED.R.CIV.P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286

**3.** Fed.R.Civ.P. 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

(citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

### A. § 1983 employment discrimination claims not preempted

■ Defendants contend that Plaintiff's § 1983 claims are preempted by Title VII. In *Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987), the Fourth Circuit held that the legislative history of the 1972 amendments to Title VII "clearly indicates that § 2 of the Act was not intended to preempt the preexisting remedy under § 1983 for violations of the Fourteenth Amendment by state employers." 827 F.2d at 958. Defendants argue that Title VII should preempt in this case by pointing to apparently contradictory authority in *Brown v. Housing Authority of Calvert County,* 150 F.Supp.2d 856, 862 (D.Md. 2001), *aff'd,* 26 Fed.Appx. 339, 2002 WL 191577 (4th Cir.2002). In that case, this court relied on more recent Fourth Circuit precedent, *Hughes v. Bedsole,* 48 F.3d 1376 (4th Cir.1995), to find that, while "Title VII does not preempt similar claims brought pursuant to § 1983," a plaintiff could not bring a sex discrimination suit pursuant to § 1983 after she had the opportunity but failed to institute a Title VII cause of action. The contradiction is illusory, as the court pointed out in *Brown,* 150 F.Supp.2d at 862, because the facts are distinguishable. In *Brown,* the plaintiff's § 1983 claims were not preempted by Title VII, but he was "precluded from bringing

§ 1983 racial harassment and discriminatory termination claims in this court," because he failed to file a civil action within the time designated by his EEOC right to sue letter. Unlike in *Brown*, in the current case, Plaintiff never began the administrative process by filing a complaint with the EEOC or equivalent state agency within the time provided as required under Title VII, and so could not bring a Title VII action. Thus, the general rule that Title VII does not preempt § 1983 claims applies and Plaintiff is not precluded from bringing a § 1983 claim for discriminatory discharge and discipline.

### B. Section 1981 claim plead adequately

Plaintiff misstates his § 1981 claim, contending that he is bringing a § 1983 action alleging deprivation of his rights under § 1981. Complaint, at ¶ 30. Plaintiff cannot bring a § 1983 action alleging deprivation of his rights under § 1981, but can bring a claim directly under § 1981.[4] Because he has plead facts sufficient to state a § 1981 claim, Plaintiff's inartful pleading will not result in dismissal where the federal standard is notice pleading, *Karpel v. Inova Health System Servs.*, 134 F.3d 1222, 1227 (4th Cir.1998)[5], and Defendant

received clear notice of Plaintiff's intent to pursue a § 1981 claim.

### C. Analysis of § 1981 and § 1983 claims

Plaintiff's claims of discrimination under § 1981 and § 1983 may be analyzed under the same standards developed in Title VII cases. *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir.1998) (federal constitutional claims brought pursuant to § 1983 and § 1981 are analyzed under Title VII proof scheme). Section 1981 can serve as the basis for bringing employment discrimination claims. Section 1981(a) states in pertinent part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." Because the "at-will employment relationship is contractual ... such relationships may therefore serve as predicate contracts for § 1981 claims." *Spriggs v. Diamond Auto Glass II*, 242 F.3d 179, 183 (4th Cir.2001), *quoting Spriggs v. Diamond Auto Glass I*, 165 F.3d 1015, 1018–1019 (4th Cir.1999). In *Spriggs*, the plaintiff brought the same allegations under both Title VII and § 1981 and the court applied the same analysis to the claims under both

---

**4.** In order to seek redress for the violation of another federal statute under § 1983, the statute in question must create an enforceable federal right and Congress must not have foreclosed a remedy under § 1983 either explicitly in the statute or by "creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Because § 1981 gives rise to its own cause of action, Plaintiff's rights are enforceable without recourse to § 1983 and so he must bring an action directly under § 1981. Similarly, in articulating his substantive due process claim in Count II, Plaintiff attempts to "bootstrap" an equal protection claim by

alleging that his due process right to equal protection was deprived. Equal protection is a separate constitutional right that Plaintiff must raise (and does raise in his § 1981 and § 1983 claims) independently.

**5.** A case argued recently in the Supreme Court presents the question of the specificity of allegations required to state a claim of job discrimination based on age or national origin. *Swierkiewicz v. Sorema*, 5 Fed.Appx. 63, 2001 WL 246077 (2nd Cir.2001), *cert. granted*, 533 U.S. 976, 122 S.Ct. 23, 150 L.Ed.2d 805 (2001), *oral argument held*, 70 USLW 3462, 2002 WL 54497 (January 15, 2002). This decision could result in a demand for greater specificity in pleading in Title VII cases.

statutes. The court will treat the claims as identical here as well.

Plaintiff alleges that he was subjected to discriminatory discipline and discriminatory termination on the basis of race. Defendants contend that Plaintiff cannot prove his discriminatory discipline and discharge claims because the mere fact of his termination does not demonstrate discriminatory intent on the part of Defendants. While Defendants are correct that, "a purpose to discriminate must be present" and alleged, *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), Defendants are incorrect that Plaintiff merely alleges that he was terminated.

Plaintiff's termination and discipline charges stem from the same activity. Plaintiff contends that he was disciplined and subsequently terminated for taking certain actions while other officers who were not black and undertook similar actions were not disciplined. Plaintiff can either satisfy his burden of proof for the failure to promote claim by direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 Plaintiff appears not to bring a separate claim for discriminatory discharge, but alleges that his termination was a form of discriminatory discipline. In his opposition brief, he does not refer to the test for discriminatory discharge, but merely to the test from *Cook v. CSX Transportation Corp.,* 988 F.2d 507 (4th Cir.1993), for discriminatory discipline. Therefore, in order to make out a *prima facie* case that discipline was discriminatory, the Fourth Circuit requires an employee to show: 1) that he is a member of a protected class; 2) that his misconduct was of comparable seriousness to the misconduct of employees not within the protected class; and 3) the discipline imposed upon the plaintiff was more severe than that imposed upon the similarly situated employees. *Cook,* 988 F.2d at 511, *citing Moore v. City of Charlotte,* 754 F.2d 1100 (4th Cir.1985). Once a Plaintiff establishes a *prima facie* case, the Defendant must present a legitimate, non-discriminatory reason for the adverse employment action alleged. *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (4th Cir. 1999). Plaintiff retains the ultimate burden of proving by a preponderance of the evidence that the real reason for the employment decision at issue was unlawful discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000).

Because Plaintiff does not even allege that there is direct evidence of discriminatory intent on the part of Defendants, his claims will be analyzed under the *McDonnell Douglas* burden shifting scheme. Plaintiff fails to satisfy the burden of proof in two ways; he does not satisfy the *prima facie* test and, even if he could, he does not offer evidence sufficient to prove that Defendants legitimate non-discriminatory reason for firing him was merely pretextual.

 In order to make out a *prima facie* case under *Cook,* Plaintiff must establish that similarly situated employees who are not in his protected class were not similarly disciplined for like offenses. *See Moore,* 754 F.2d at 1107–11. While the conduct does not have to be identical, the similarly

situated employee must have engaged in conduct of "comparable seriousness." *Cook*, 988 F.2d at 511. Plaintiff attempts to satisfy this test in two ways; by alleging that Cpl. Santos was not disciplined despite similar conduct, Paper no. 9, at 12–13, and by alleging generally that the disciplinary system is persistently discriminatory. Complaint, at ¶ 30. First, Plaintiff's allegations regarding Cpl. Santos are irrelevant because the conduct she is alleged to have undertaken is not of comparable seriousness or similar kind to Plaintiff's treatment of McCarthy. She is merely alleged to have failed to take photographs of McCarthy in the course of processing her case. While possibly in violation of police procedures, Cpl. Santos' failure to follow through on the investigation with photographs is not similar to Plaintiff's alleged mistreatment of McCarthy which involved an affirmative act of harassment. Accordingly, her misconduct is not of "comparable seriousness" to that of Plaintiff and so evidence that she was not disciplined does not support making out a *prima facie* case of disparate discipline.

Second, Plaintiff alleges generally that the disciplinary system constitutes a persistent practice that disparately disciplines black officers. Complaint, at ¶ 30. While this allegation, if proven, does not necessarily fit the test from *Cook*, determining whether invidious discriminatory purpose was a motivating factor in cases asserting violations of equal protection "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," and can be proven by showing that, ". . . a clear pattern, unexplainable on grounds other than race, emerges from the effect of state action. . . ." *Arlington Heights v. Metropolitan Housing Corp.*,

429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (internal citations omitted). The only evidence Plaintiff offers to support this contention are newspaper articles detailing instances in which some Prince George's County police officers covered up for the misconduct of others. Plaintiff cites these articles for the inference, apparently, that he was disciplined despite this practice of covering up misconduct and so was treated differently from other, presumably white, officers. Even if these articles were admissible as evidence, the inferences Plaintiff seeks to draw from them are too attenuated to substantiate his allegations regarding the practice of the disciplinary system. Accordingly, Plaintiff cannot satisfy the test from *Cook* by demonstrating a pattern of disparate discipline existed unexplainable on grounds other than discrimination and so cannot make out a *prima facie* case.

■ Even if Plaintiff could demonstrate that Cpl. Santos or some other officer was disciplined differently for like offenses, he has not forecast any evidence that Defendants legitimate non-discriminatory reason for firing him was merely pretextual. Plaintiff was suspended after allegations of impropriety concerning his handling of the McCarthy case and terminated after the AHB found that he had violated department regulations in handling that case. Plaintiff collaterally attacks that hearing on several grounds, including a subsequent grant of summary judgment in his favor in McCarthy's Maryland state lawsuit against him. However, summary judgment in that case was not on the merits [6], and Plaintiff cannot now attack the state administrative board findings in federal court. Following his termination, Plaintiff did file a petition for judicial review of the AHB findings in

---

**6.** McCarthy lost that case on summary judgment because she had failed to file properly under the Maryland Tort Claims Act.

Prince George's County Circuit Court on May 6, 1998. Plaintiff and his former counsel failed to appear at the scheduled July, 1999, hearing, though Plaintiff claims that he never received notice of this hearing. The petition was dismissed on September 8, 1999, without Plaintiff's knowledge, on the motion of Prince George's County. Paper no. 9, ex. 1. Despite failing to prosecute his appeal of the AHB findings, Plaintiff now claims that McCarthy's deposition testimony from the state lawsuit contradict the AHB findings by demonstrating that he behaved "professionally" with her at all times. However, the AHB findings that Plaintiff violated rules of conduct are *res judicata*. By his own admission, Plaintiff does not press a procedural due process claim challenging the constitutionality of those administrative proceedings (see below) and Plaintiff cannot, in effect, challenge the findings of the board on appeal here. Accordingly, because Plaintiff does not make out a prima facie case or set forth evidence that the Defendants' stated reason for his suspension and termination was merely pretextual, summary judgment will be granted as to Plaintiff's § 1981 and § 1983 claims.

### D. Same analysis for Article 24 claims

In Count III, Plaintiff seeks to state a claim under Article 24 of the Declaration of Rights of the Maryland Constitution. In their motion to dismiss, Defendants point to the facts that Article 24 is construed *in pari materia* with the Fourteenth Amendment, *Gray–Hopkins v. Prince George's County*, 163 F.Supp.2d 571, 582 (D.Md.2001), *citing Williams v. Prince George's Cty.*, 112 Md.App. 526, 685 A.2d 884, 895–896 (1996); *see also Beeman v. Dept. of Mental Health and Hygiene*, 107 Md.App. 122, 666 A.2d 1314 (1995), in order to address Counts II and III of the complaint as identical. Paper no. 7, at 19 n. 8. However, Defendant mischaracterizes

Count III as a only a due process claim and so is incorrect in assuming that the arguments for dismissal would be the same as for Count II. In Count III, unlike in Count II, Plaintiff alleges **both** due process and equal protection violations. Complaint, at ¶ 39. In his opposition brief, however, Plaintiff characterizes Count III only as a claim for violation of equal protection under Article 24. Paper no. 9, at 15. Therefore, Plaintiff apparently concedes that he does not state a claim for a due process violation and, in any case, such a claim would fail on summary judgment as shown below. Although Defendants do not address Plaintiff's equal protection claim under Article 24, equal protection under Article 24, "applies in like manner and to the same extent as the Equal Protection Clause of the Fourteenth Amendment." *Brown*, 150 F.Supp.2d at 863. Accordingly, summary judgment will be granted as to Plaintiff's equal protection claim under the Maryland Constitution for reasons enumerated above when addressing Plaintiff's § 1981 and § 1983 claims.

### E. Due Process claim

Count II of Plaintiff's complaint is confusing. While Plaintiff alleges that Defendants violated his substantive due process rights, he alleges facts that, if true, possibly support a procedural due process claim, not one for substantive due process under the Fourteenth Amendment. Plaintiff concedes that the Law Enforcement Officers Bill of Rights (LEOBR) provides sufficient procedural due process. Paper no. 9, at 14. However, he claims to be making a substantive due process claim under the Fourteenth Amendment. Paper no. 9, at 14.

Plaintiff confuses the standard for substantive due process claims with the standard for supervisory liability from *Collins v. City of Harker Heights*, 503 U.S. 115,

117, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Nevertheless, Plaintiff has alleged a violation of his substantive due process rights under the Fourteenth Amendment. The substantive component of the Due Process Clause "provides heightened protections against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), *citing Reno v. Flores*, 507 U.S. 292, 301–302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Plaintiff claims that his fundamental right to equal protection was violated by his termination. Simply put, substantive due process is the wrong rubric under which to bring such a claim. While both rights are found in the Fourteenth Amendment, equal protection is a separate constitutional right and can be raised independently, as Plaintiff has done in bringing his § 1981 and § 1983 claims. Those claims were dealt with above. Plaintiff does not articulate a fundamental liberty interest with which the government interfered. Accordingly, because Plaintiff admits that there was no procedural due process violation and sets forth no evidence supporting a substantive due process claim under the Fourteenth Amendment, Defendants' motion for summary judgment will be granted as to Count II of the complaint.

## IV. Conclusion

The court will grant Defendants' motion for summary judgment as to Counts I and III because Plaintiff does not forecast sufficient evidence even to make out a *prima facie* case of discriminatory discipline or termination under § 1981, § 1983, or Article 24 of the Maryland Declaration of Rights. Summary judgment will also be granted as to Count II because Plaintiff does not set forth evidence that he was deprived of a protected interest in violation of his substantive due process rights. A separate order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of February, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED as to all counts;

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendants, and against Craig L. Morrow, on all counts;

3. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.